26  553
92  63

## COBB and others vs. ARUNDELL.

ACCOUNT STATED: (1.) *May be for only a single bill of goods.* (4.) *When person receiving bill of goods bound.*
AGENCY: (2, 3.) *Carrier as agent for sender or receiver of goods.*
REVERSAL OF JUDGMENT: (5.) *When judgment not reversed for error.*

1. The conclusive effect, as evidence, of an *account stated* does not depend upon its containing charges on each side, besides money; and the rule applies to a single bill of goods, sent by vendor to purchaser and retained without objection.
2. The fact that the people generally of a town were accustomed to order goods from a certain village by a particular teamster, would not authorize a merchant of the village to deal with the teamster as agent for a resident of the town who had never previously employed him in that way.
3. Where goods, not ordered by defendant, were sent to him by plaintiff through a teamster, the latter, not being defendant's agent, was the agent of plaintiff; and if defendant refused to receive the goods as his own from the teamster (simply consenting to store them temporarily at the request of the latter), this was notice to plaintiff of his non-acceptance.
4. Where, after such refusal, plaintiff sent a bill of the goods to the defendant, his neglect to return the bill, or express further his non-acceptance of the goods, *held* not to bind him as upon an account stated.
5. A judgment will not be reversed for error in giving instructions, where the verdict must have been the same if no error had been committed.

APPEAL from the Circuit Court for *Iowa* County.

Action on an account for fifty washing machines, alleged to have been manufactured and delivered by the plaintiffs to the defendant upon his order.*

The plaintiffs were doing business in the town of Mineral Point, and the defendant in the town of Dodgeville, both in Iowa county. The plaintiffs' own testimony tended to show that one Mitchell, who was engaged in driving a team between Mineral Point and Dodgeville, ordered fifty of said machine heads in the name of the defendant, at an agreed price;

---

*There was a claim for two other machines, which were charged to defendant under entirely different circumstances; but as the opinion makes no comment upon this part of the case, it is designedly omitted here.
.REP.

that on the 5th of June following, they delivered the "heads" to defendant by one Davey, also a teamster between the same points; that on the same day plaintiffs made out a bill ·against the defendant, which included "about $18 old account, and $100 for the fifty washing machines;" that a few days after, one of the teamsters brought in $18, and "said it was from *Arundell* for old account. He said, let the account for the washing machines run;" that bills for the machines were several times subsequently sent to defendant, but he never made any reply; that the teamster Davey told them some months after the machines were delivered, that the reason why defendant would not pay for them was, because he could not get tubs to accompany them; that plaintiffs never knew until in January, 1870, that defendant refused to receive the machines.

The testimony of the defendant in his own behalf, together with that of the two teamsters, Mitchell and Davey, tended to show that defendant never authorized Mitchell to order the machines in question; that defendant did tell Mitchell to ask plaintiffs how much they would make fifty such machines for; that Mitchell accordingly made that inquiry, and further asked them whether, if defendant wanted them, they (plaintiffs) "could make them right off;" that on the evening of the same day he reported plaintiffs' answer to defendant; that Davey afterwards took the fifty machines to defendant's store and commenced unloading them while the latter was at supper; that when defendant returned, he denied that he had ever ordered them, and refused to receive them; that he then, at Davey's request, consented to their being stored in his back warehouse, as it was then raining, and Davey wished to see plaintiffs in regard to the disposal of them; that within a day or two thereafter Davey told one of the plaintiffs "all about it;" that defendant received from plaintiffs a bill for $118,

of which $100 was for the machines, and $18 for sash previously purchased; that in response to this, he sent $18 for the old bill, but never gave any direction as to how it should be applied; and that the machines were still in store at defendant's warehouse.

It appeared that the teamsters Mitchell and Davey were in the almost daily habit of taking verbal orders for goods from citizens of Dodgeville to Mineral Point, and obtaining and delivering the goods thus ordered.

The following instructions were given: I. At the plaintiffs' request: (1.) "That if A. receives into his possession goods of B. by accident or mistake, B. supposing them to be received upon an order from A. for their delivery, and a bill of them is afterwards sent to A., with statement of price and demand of payment, it becomes A.'s duty .to notify B. that he is not the purchaser; and if he keeps the goods under such circumstances, for a long time, without giving such notice, he becomes liable for their value." (2.) "That if an account has been sent from one dealer to another, and no objection is made to it, after several opportunities of writing have occurred, the law regards it as an acquiescence in the correctness of such account; and after repeated presentations of the same account, and the lapse of a long period of time without objection being made thereto, it will be deemed in law a settled account, and conclusive between the parties, unless fraud be shown, or valid reasons for not notifying the sender." II. At defendant's request: (1.) That "an account stated cannot be made evidence of indebtedness growing out of an alleged transaction which never occurred;" that "the evidence must show a mutual dealing between the parties, in order that an account stated should have the effect of being considered correct if not objected to in a reasonable time." (2.) That "there can be no ratification of the acts of an

agent further than those acts are known to the principal when adopted." III. In the general charge: "(1.) If the defendant only authorized Mitchell to inquire at what price plaintiffs would make and furnish the machines, defendant would not be liable in case Mitchell overstepped his authority, and directed plaintiffs to manufacture the machines and deliver them to defendant. To justify such a conclusion, it would have to be shown that Mitchell had been in the habit of making such contracts for the defendant, and that the latter had ratified them. (2.) Defendant was not bound by anything that Davey may have said to plaintiffs when he paid them the $18, unless it is shown that defendant authorized Davey to make those special statements. (3.) The retaining of an account for a considerable time after sent, without making any objection to its correctness, in cases where the creditor does not know his account is disputed, affords a presumption that the debtor assents to the claim. The payment of part, however, may justify the presumption that the remainder is doubted or disputed. What weight is due to these considerations is for you to determine in connection with all other facts proven before you. (4.) If Davey told plaintiffs that defendant refused to accept the machines, it was notice to them that their claim was disputed."

Verdict for the defendant; new trial denied; and plaintiffs appeal from a judgment on the verdict.

*Lanyon & Spensley* (with *M. M. Cothren*, of counsel), for appellants:

1. It was error to instruct the jury that defendant was not liable on Mitchell's order unless he had actually authorized Mitchell to make the contract, or had ratified similar ones previously. The jury should have been left to determine from all the facts of the case, whether plaintiffs were justified in supposing that Mitchell possessed the authority which he asserted. *Garth v. Howard,* 5 C. & P. 346 ; 1 Parsons

on Con. 40; *Thurman v. Wells*, 18 Barb. 500; Starkie's Ev. *32; *McClung v. Spotswood*, 19 Ala. 165; *McDonnell v. Bank*, 20 id. 313. 2. Davey having been defendant's agent for paying the $18, his declaration in making such payment, that plaintiffs were to "let the account for the washing machines run," was binding upon his principal. *Fairlee v. Hastings*, 10 Ves. 127; *Baring v. Clark*, 19 Pick. 220; *Shelhamer v. Thomas*, 7 S. & R. 106; *Hough v. Doyle*, 4 Rawle, 294; *Hannay v. Stewart*, 6 Watts, 487; *Stewartson v. Watts*, 8 Watts, 392; *Clark v. Baker*, 2 Whart. 340; *Severing v. Rittenhouse*, 4 id. 130; *Garth v. Howard*, 8 Bing. 451; *Latham v. Pledger*, 11 Texas, 439; *Covington, etc. R. R. Co. v. Ingles*, 15 B. Mon. 637; *Moore v. Bettis*, 11 Humph. 67; *Cooley v. Norton*, 4 Cush. 93; *Stiles v. R. R.*, 8 Met. 46; *McDonell v. Dodge*, 10 Wis. 107; *M. & M. R. R. Co. v. Finney*, id. 388; *Thallhimer v. Brinckerhoff*, 4 Wend. 391; 1 Phil. Ev. (C. & H.'s ed.) 99; Story on Agency, §§ 134–6; Lloyd's Paley, 255–274. 3. Such a declaration, thus brought home to the defendant, was a ratification of the contract made by Mitchell (if that was made by him without authority); and this, even though defendant previously refused to ratify. *Cornwall v. Wilson*, 1 Ves. Sr. 509; *Codwise v. Hacker*, 1 Caines R. 537; Story on Agency, § 259; Lloyd's Paley, 28, 29, 31. 4. Defendant was bound by his retaining the accounts for the machines, without returning them or intimating any objection. And there is no authority or reason for restricting the rule to a case of mutual accounts. *Sherman v. Sherman*, 2 Vern. 276; *Willis v. Jernegan*, 2 Atk. 252; *Tickel v. Short*, 2 Ves. Sr. 239; *Freeland v. Heron*, 7 Cranch, 141, 147; *Murray v. Toland*, 3 Johns. Ch. 575; 1 Greenl. Ev. 197; 2 Phil. Ev. (C. & H.'s ed.) 194; 2 Starkie Ev. 75; *Field v. Ried*, 21 Ga. 314; *Shaw v. Oakey*, 3 Rob. (La.) 361; *Brown v. Brown*, 16 Ark. 202; *Highmore v. Primrose*, 5 M. & S. 65; *Tharp v. Tharp*, 15 Vt. 105; *Coopwood v. Bolton*, 26 Miss. 212; *Wood v.*

*Gault*, 2 Md. Ch. 433; *Seymour v. Marvin*, 11 Barb. 80; *Lockwood v. Thorne*, 12 id. 487; 11 N. Y. 170, and 18 id. 170; *Phillips v. Belden*, 2 Edw. Ch. 1; *Bruen v. Hone*, 2 Barb. 586; *Hutchinson v. Market Bank*, 48 id. 303; *Towsley v. Dennison*, 45 id. 491; *Dows v. Durfee*, 10 id. 213; *Ogden v. Astor*, 4 Sandf. 311. And see especially *Power v. Root*, 3 E. D. Smith, 70; and *Ware v. Dudley*, 16 Ala. 742. 5. The instruction that payment of part of an account may justify the presumption that the rest is disputed, was contrary to law and common sense. If the money was paid without any direction as to its application (as defendant claims), then it was a general payment on the account rendered, and an admission of its correctness. *Elgar v. Watson*, 1 Carr. & M. 494; *Baillie v. Cazelet*, 4 Term, 579; *Hunt v. Bridgham*, 2 Pick. 581; *Stump v. Henry*, 6 Md. 201; *Baxter v. Penniman*, 8 Mass. 134; *Whipple v. Stevens*, 2 Foster, 219; 2 Starkie Ev. *166; 2 Phil. Ev. (C. & H.'s ed.) 10.

*Reese & Mulks* and *Gregory & Pinney*, for respondent. [No brief on file.]

PAINE, J. The questions, whether the teamster Mitchell had any authority to order the machine heads for the defendant, and whether the teamster Davey had any authority, at the time he paid for the defendant the $18 on the old account, to request the plaintiffs to "let the account for the machine heads run," were fairly submitted to the jury, in such a manner that they must have clearly understood that if they found either the original authority or the subsequent ratification necessarily implied by such a request, then the plaintiffs ought to recover. They found for the defendant; and there was nothing in the evidence that would justify either this court or the court below in interfering with the verdict upon either of these points.

Certainly, no practice by the people of Dodgeville

to send orders for goods to Mineral Point by these teamsters, no matter how general such practice may have been, could constitute any such apparent authority as would have justified the plaintiffs in assuming an agency, as against any one who had never previously employed them. The question of agency in such cases is not of such a joint character, that because a majority, or many, of the people of a town employ a person as agent, therefore those knowing that fact may justly assume that he is agent for all the rest. And if, upon the strength of that alone, they deal with him as agent of one who has never previously employed him, they take the risk of his having an actual authority.

The only question in the case about which we have any doubt is, whether the judgment ought not to be reversed for the instruction given by the court, that "the evidence must show a mutual dealing between the parties in order that an account stated shall have the effect of being considered correct if not objected to in a reasonable time." That is not a correct proposition, if by the words "mutual dealing" the court meant that there must be on each side some charges besides money. There seems to be no reason why the principle in question would not apply to a single bill of goods sent by the vendor to the purchaser, who should retain it without objection. But we have come to the conclusion that although this instruction was erroneous, the judgment ought not to be reversed on account of it, because, upon the undisputed evidence, the principle relied on by the plaintiffs, and which they claim this instruction deprived them of the benefit of, was inapplicable to the facts. The defendant and Davey both testified that when Davey attempted to deliver the machine heads to the defendant, the latter declined to receive them, saying that he had never ordered them, and only allowed them to be stored in his warehouse for the convenience

of the teamster. This evidence is undisputed. Neither of the witnesses is impeached. Upon this evidence Davey must be held to have been the agent of the plaintiffs for the purpose of . tendering the articles to the defendant ; and when, upon such tender, the alleged purchaser refuses to receive the property, and informs the agent that he never bought it, that is information to the principal. · And if, after such a transaction, the principal sends bills to the alleged purchaser, including this property, the latter cannot be bound to constantly repeat his refusal and protest against such bills, under peril of being held to have admitted their correctness. When he has once informed the very agent sent with the property that he never ordered it, and refuses to receive it, he may rest upon that as a sufficient dissent.

We discover no error in the rulings of the court below, and the judgment must be affirmed.

*By the Court.*—Judgment affirmed.