HILL vs. DURAND and others, imp.

*March 16 — September 11, 1883.*

FINDINGS: EVIDENCE: ACCOUNT STATED. *(1) Findings sustained. (2) When giving of note not evidence of account stated. (4) Receipt, how far conclusive.*

TRUSTS AND TRUSTEES. *(3) Presumption as to application of over-payment to trustee.*

INTEREST. *(5) Application of partial payments.*

COSTS. *(6) Review of taxation when allowance discretionary. (7) What is a "trial." (8) Fees for drawing findings.*

1. The evidence in this case is *held* to sustain the findings and, among other things, not to show that the parties ever had a full and complete adjustment and settlement of their mutual accounts.

2. Where one party was in the habit of giving to the other notes which did not represent what was actually due, but which were intended to stand as collateral security for his indebtedness, a note given at

a certain time for a certain sum is not *prima facie* evidence that such sum was a balance due upon account stated.

3. Where a mortgage was given to secure the payment of moneys belonging to a trust estate, over-payments thereon will be presumed to have been received as trust funds and to have been used for the benefit of the trust estate.

4. An instrument acknowledging the receipt of certain notes and a mortgage, to be held as collateral security for any indebtedness of the maker, and accompanied by a memorandum of other notes as security for which those first mentioned are to be held, will not prevent the creditor from showing the existence, at the date of the receipt, of other notes of the debtor to him not mentioned in the memorandum.

5. When partial payments have been made, the payment is to apply, in the first place, to the discharge of the interest then due. If the payment exceeds the interest, the surplus goes towards discharging the principal, and the subsequent interest is to be computed on the balance of principal remaining due. If the payment be less than the interest, the surplus of interest must not be taken to augment the principal, but interest continues on the former principal until the period when the payments, taken together, exceed the interest due, and then the surplus is to be applied towards discharging the principal, and the interest is to be computed on the balance.

6. Where the matter of costs was in the discretion of the court below, this court will not scan with nicety the exercise of that discretion in respect to the allowance or disallowance, in taxation, of particular items.

7. The taking of testimony before a referee appointed to take and report the same to the court is a "trial of the cause" within the meaning of the statutes relative to costs, and the usual fee for attendance thereon may be taxed.

8. Where the attorney of the prevailing party draws the findings in an action, fees therefor may be allowed in the taxation of costs.


APPEALS from the Circuit Court for *Racine* County.

The case is stated in the opinion. Exhibit B, therein referred to, was as follows:

"RACINE, WIS., Aug. 12, 1867.

"Received of *Isaac M. Hill* his notes, Aug. 12, 1867, for $8,500 . . . . secured by a mortgage on the barque

Hill vs. Durand and others, imp.

'Green Bay,' which notes and mortgage I am to hold as collateral security for any indebtedness of the said *Hill* either to me or to Caroline B. Durand. . . . .

"Wm. Cowles,

"By *H. S. Durand*, Agent.

"Amount for which the above is held at this date, Aug. 12, '67: [Here follows a description of several notes including only two given by Hill & Sinclair, one for $1,000, and the other for $1,200]."

. The plaintiff appealed from the whole of the judgment except so much as adjudges the mortgage on the vessel to be fully paid and discharged; and the defendants appealed from the whole of the judgment.

For the plaintiff there was a brief by *Fish & Dodge*, and oral argument by *Mr. Fish*.

For the defendants there were briefs by *David S. Ordway*, of counsel, and oral argument by *W. P. Lynde* and *Mr. Ordway*. They argued, among other things, that to make an account a stated account it is not necessary that it should be signed. It is sufficient if it has been examined and expressly or impliedly accepted by both parties. 1 Story's Eq. Jur., § 526; *Willis v. Jernegan*, 2 Atk., 252; Story's Eq. Pl., § 802; *Lockwood v. Thorne*, 18 N. Y., 288; *Kock v. Bonitz*, 4 Daly, 117; *Jacob v. Lindsay*, 1 East, 460; *Styart v. Rowland*, 1 Shower, 215; *Highmore v. Primrose*, 5 Maule & S., 65; *Knowles v. Michel*, 13 East, 249; *Langdon v. Roane's Adm'r*, 6 Ala. 518; *Philips v. Belden*, 2 Edw. Ch., 1; *Murray v. Toland*, 3 Johns. Ch., 569; *Wilde v. Jenkins*, 4 Paige, 481; *Harley v. Eleventh Ward Bank*, 76 N. Y., 618; *Freeland v. Heron*, 7 Cranch, 147; *Wiggins v. Burkham*, 10 Wall., 129. The giving of a promissory note is evidence *prima facie* of a balance due on account stated. 2 Starkie on Ev. (6th Am. ed.), 137 and note *f.; Lake v. Tysen*, 2 Seld., 461; *De Freest v. Bloomingdale*, 5 Denio, 304; *Phy v. Clark*, 35 Ill., 377. See, also, *Decker v. Livingston*, 15 Johns., 479;

*Dutcher v. Porter*, 63 Barb., 19; *Treadwell's Ex'rs v. Abrams*, 15 How. Pr., 219. The judgment *against the trust estate* for the amount found to have been overpaid is erroneous. *Guerry v. Capers*, Bailey (S. C.), 159; *Mulhall v. Williams*, 32 Ala., 489; *McEldery v. McKenzie*, 2 Porter, 33; *Johnson v. Gaines*, 8 Ala., 592; *Lyon v. Hays' Adm'r*, 30 id., 430; Lewin on Trusts, 453, 454; *Kessler v. Hall*, 64 N. C., 60; *Livingston v. Gaussen*, 21 La. Ann., 286; *Fearn v. Mayers*, 53 Miss., 458; *Clopton v. Gholson*, id., 471; *Norton v. Phelps*, 54 id., 467; Hill on Trustees, 567; *Worrall v. Harford*, 8 Ves. Jr., 4, and note on p. 9; *Ferrin v. Myrick*, 41 N. Y., 315; *Austin v. Munro*, 47 N. Y., 360; *Stanton v. King*, 8 Hun, 4; *Cronan v. Cotting*, 99 Mass., 336; *Hewitt v. Phelps*, 105 U. S., 400.

The following opinion was filed April 4, 1883:

COLE, C. J. After the decision of this court holding the complaint good on demurrer (see 50 Wis., 354), all the defendants, except Cowles, answered, and the cause was tried upon its merits. The circuit court gave a judgment in favor of the plaintiff, ordering the mortgage on the vessel, Green Bay, to be canceled; and for $4,474.70 and costs, to be satisfied out of the trust estate. From this judgment both parties have appealed. The appeal of the defendants will first be considered. The transactions investigated on the trial were quite numerous, and extended through a period of more than fifteen years. The way in which the business had been done renders it extremely difficult to get at the real facts as to some of these transactions. There was some documentary evidence, and many letters written by the parties, introduced to prove their respective claims. The plaintiff and the defendant *Durand* also testified, and on many important points directly contradicted each other. There is no disagreement between counsel as to any principle of law involved. The controversy turns wholly on questions of fact

claimed to be proven or established by the evidence. The litigation grows out of several loans of money admitted to have been made by the defendant *Durand* to the plaintiff individually, or to parties for whom the plaintiff became personally responsible. The mortgage in question was given by the plaintiff to secure the payment of these loans. The plaintiff has made payments on the indebtedness from time to time either in money, or coal and fuel. It is not practicable to give a detailed statement of these various transactions on one side or the other, nor would it serve any useful end to do so. Neither is it deemed advisable to discuss at length the evidence in the case. It must suffice to state the conclusions which we have drawn from it.

The contention of the plaintiff is that he has largely overpaid all his indebtedness. On the other side, the contention is that he has not paid it in full. The court below went into a general investigation of all their dealings from the time the first loan was made in April, 1863, down to the commencement of this suit, for the purpose of ascertaining the true state of the accounts between the parties. The main defense set up in the answers to the plaintiff's claim was that there had been two or more full and complete accountings and settlements between the parties, which were binding as to all matters included in them. And the learned counsel for the defendants, in an able and exhaustive argument, labored to show that the court erred in opening or going behind these settlements. They say that the rule of law is well established in this and other courts that where parties have made a full and complete adjustment and settlement of their mutual accounts, such a settlement is conclusive, unless impeached for mistake or fraud. There is no doubt as to the correctness of the rule of law relied on. The only question is, Does the evidence make a case for its application? In other words, does the testimony show that the parties ever examined their mutual accounts, and adjusted

and settled them? Or does the evidence prove that there was ever an account stated which was not objected to by the plaintiff, and which should now be held to be correct?

. There was no express finding whether there had ever been an account stated, or whether there was any settlement between the parties, as the answer states. But the court, by examining the entire account, and restating the same from the commencement of their dealing, of course necessarily negatives any such fact. It is true, *Mr. Durand* positively testified that there had been more than one complete settlement of their accounts, and there is testimony which corroborates his statements. But, on the other hand, the plaintiff as positively denies that any such settlement was had, or that there was ever any account rendered which showed what loans and payments were made. The weight of testimony, it seems to us, sustains the plaintiff on that point. Our conclusion, then, is that there was no account rendered, nor settlement made, which can be deemed conclusive; therefore that it was not error for the court to examine and restate the accounts from the beginning of their business dealings with each other. Much stress is laid by defendants' counsel upon a fact which they insist is established by the evidence, namely, that the parties on the 9th of March, 1874, looked over their accounts, and that a note was then given by the plaintiff for $1,961.97, which, it is said, was for the amount then found due. This was when the old mortgage on the vessel was released, and a new one given on three eighths of the same. Now, it is said that the giving of this note was *prima facie* evidence of a balance due on an account then stated. That there was any examination of accounts when the new mortgage was executed is denied by the plaintiff. He also denies that a note for $1,961.97 was then given. But we assume, for the purpose of the argument, that he was mistaken in denying that any such note was then made. But still, how could the note be said to be presumptive evi-

dence that the maker was indebted to the payee for the amount therein named? Confessedly there was a note for $5,000 then executed, as collateral security for any amount which might be found due the defendants on final settlement. The evidence conclusively shows that the plaintiff was in the habit of giving *Mr. Durand* notes, which did not represent what was actually due, but which were intended to stand as collateral security for his indebtedness. Several instances of that kind appear in the evidence. This being the case, even if a note for $1,961.97 was given on the 9th of March, 1874, it could have no such effect as evidence as is claimed for it. It certainly could not be presumed, under the circumstances, that it was given for the correct amount due the payee on an account stated, whatever weight the note would otherwise have to prove that fact. There are many other items of evidence which are relied on to prove a settlement, but we shall not dwell upon them. We content ourselves in saying that there is no such clear and satisfactory proof of the fact as will warrant the inference that a full settlement of accounts was ever had, so as to conclude the parties from going into an investigation of their entire business transactions. The defense set up in the answers on that point must fail.

There are a number of exceptions taken to the findings as to the amount of wood and coal sold and delivered to the defendant *Durand* in various years. The discrepancies between some of the bills rendered and amounts claimed to have been actually delivered are explained by the plaintiff in his testimony given on the trial. We see no error in the amounts as allowed by the court, when all the testimony is considered. Those exceptions, therefore, to the findings are not sustained.

But it is further objected that the court erroneously found that the over-payments made were used by *Mr. Durand* for the benefit of the trust estate, or became a part of such es-

tate. The mortgage was given to secure the payment of moneys belonging to the trust estate, and if over-payments have been made on it we see no valid objection to charging that estate with the excess. Presumably the trustee received these payments as trust funds, and has used them for the benefit of and to increase that estate, and the court so finds. This objection may be dismissed without further comment. This brings us to the plaintiff's appeal.

On that appeal the main question relates to the correctness of the finding that the entire principal of the $3,000 loan, made by Mrs. Durand to the firm of Hill & Sinclair on the 1st of August, 1866, remained due and unpaid on the 12th of August, 1867. In the letter written by the firm to Mrs. Durand, dated December 11, 1866, they state in substance that they had given three notes in renewal of their original note for $3,000,— one due in two months, for $1,000; one in three months, for $1,177.50; and one in four months, for $1,000. It is claimed that the evidence shows that the two-months' note, which became due February 1, 1867, was paid by the firm when it fell due. The plaintiff, in his testimony, says that he has no doubt but the firm paid that note, though he does not produce any direct written proof of the fact. It is said that Exhibit B, dated August 12, 1867, shows that at that time the indebtedness of Hill & Sinclair to Mrs. Durand was $2,200, and that the necessary inference is that the two-months' note had been paid. That exhibit does, indeed, show that the collateral notes for $8,500, and mortgage on the vessel Green Bay, were held to secure the payment of two notes of Hill & Sinclair to Mrs. Durand, which amounted to only $2,200. But Mr. Durand's recollection is that at this time there was a note of Hill & Sinclair for $1,000 in the hands of Sleeper & Whiton, in Chicago, which was to be exchanged for some coal stock. It must be confessed that the evidence as to what became of the first $1,000 note, given about December 1, 1866, is very obscure and unsatis-

factory.  The plaintiff's counsel claims that Exhibit B is conclusive as to the fact that no such note was then outstanding and unpaid; and he says it could not be shown by parol that Hill & Sinclair then owed Mrs. Durand an indebtedness exceeding that there stated.

We do not think this position of counsel is sound when applied to the instrument in question.  Exhibit B is in the nature of a receipt.  It was susceptible of explanation by extrinsic circumstances.  Certainly it would not prevent the defendants from showing that another note of Hill & Sinclair existed which was not referred to in that instrument. Indisputably three notes were given by the firm of Hill & Sinclair in December, prior to the date of this instrument. There is no direct and satisfactory testimony that one had been paid.  If such were the case, it is strange the plaintiff could not produce some written evidence of the fact, or testify to it in a more positive manner than he did.  It is said the books of Hill & Sinclair would have shown payment of the note if they could have been found.  It was, of course, incumbent upon the plaintiff, as a part of his case, to establish the fact of payment by satisfactory evidence. In the letters of *Mr. Durand* which were introduced on the trial there are some things which tend to prove that the first note had been paid, but these statements or admissions will hardly justify us in saying the fact of payment was established.  Besides, it should be borne in mind that the court below in its findings negatives the fact of such payment.  There is surely no clear preponderance of testimony against that finding.  Under our rule it must therefore stand.

In stating the account, the court made a rest at, and computed interest to, the date of each payment, adding interest to the principal and then deducting the payment made.  The court also computed interest on every over-payment from its date down to the date of the finding.  It is said by plaint-

iff's counsel that this method of computation was erroneous, and resulted in some instances in compounding the interest every three months.

In *Connecticut v. Jackson*, 1 Johns. Ch., 17, the chancellor states the rule for computing interest as follows: " When partial payments have been made, the payment is to apply in the first place to the discharge of the interest then due. If the payment exceeds the interest, the surplus goes towards discharging the principal, and the subsequent interest is to be computed on the balance of principal remaining due. If the payment be less than the interest, the surplus of interest must not be taken to augment the principal; but interest continues on the former principal until the period when the payments, taken together, exceed the interest due, and then the surplus is to be applied towards discharging the principal; and the interest is to be computed on the balance." It will be seen that the court below in effect adopted this rule in stating the account, and we think it was correct. See *Green v. Wescott*, 13 Wis., 606; *Reed v. Jones*, 15 Wis., 41. This brings us to the question of costs.

There were exceptions taken to the taxation of costs on both sides. Some of the items objected to are small in amount, and we shall not notice them. We merely say that this is an equity case, and in regard to many items, whether they should be allowed as costs was within the discretion of the trial court. We are not disposed to scan with great nicety the exercise of that discretion. There was no error in allowing the usual fee for attendance before the referee appointed to take and report the testimony to the court. The taking of such testimony was "a trial of the cause" within the intent of the statute. Nor do we think there was any error in allowing attorney's fees for drawing the findings and serving copies thereof. It is oftentimes impracticable for the trial judge to draw up formal findings; consequently that labor is imposed upon the counsel of the

prevailing party.   There is no objection to this practice that we can see, nor in allowing the fees for the service.   It may be that some items of the plaintiff's costs were improperly disallowed, but they are small in amount, and are offset by disallowances on the other side.   As we have said, these matters were in the discretion of the court below to a great extent, and we will not review the exercise of that discretion on the exceptions in this case.

We have not noticed all the points discussed by counsel, but the views expressed are decisive of the case.

*By the Court.*— That portion of the judgment appealed from by the plaintiff is affirmed; and the whole judgment is affirmed on the defendant's appeal.

A motion for a rehearing on the defendant's appeal was denied September 11, 1883.