RIPLEY, Respondent, vs. SAGE LAND & IMPROVEMENT COMPANY, Appellant.

*December 15, 1908—March 9, 1909.*

*Account stated: Acquiescence: Conclusiveness.*

Defendant, being indebted to plaintiff for one half of the net profits of the purchase and sale of lands after deducting expenses and "annual interest of seven per cent." on moneys advanced in the transaction, sent to plaintiff a statement of account showing his share of the profits to be a certain sum, and inclosed a check therefor. In such statement interest was compounded annually. Plaintiff acknowledged receipt of the statement without making any objection thereto, and retained and used the money. Within a short time he was informed of the fact as to the computation of interest, but not until two years and nine months after receiving the statement did he give defendant any notice that he claimed an overcharge of interest. *Held*, that he had assented to the settlement and accepted the money tendered as payment of the whole amount due him, and that, no fraud or mistake being claimed, the account so settled became conclusive on the parties. BARNES, DODGE, and KERWIN, JJ., dissent.

APPEAL from a judgment of the circuit court for Eau Claire county: JAMES O'NEILL, Circuit Judge. *Reversed.*

The appeal is from a judgment for $1,420.25 in favor of plaintiff. Under date of September 17, 1888, H. W. Sage & Co. wrote the plaintiff as follows:

"Yours 12th received. We will take and pay for such portions of 6,500 acres you describe as you may select after examination on the basis proposed by you, *i. e.* you to examine and locate; attend to paying taxes, if required; and protect from trespass; we to pay for the land (to be located in the name of H. W. S.), and furnish money for taxes till we sell the lands, and when sold to give you one half the net profits, over and above cost, taxes, necessary expenses of handling, and annual interest at seven per cent. We presume you will be back at Eau Claire with minutes of the lands when you receive this letter, and you can either wire us the amount of

cash you will need, and we will send you bk. drafts for it, or if equally convenient, you may draw on us at sight, and this shall be your authority to draw on us enough to pay for the land up to 6,500 acres at ten shillings per acre."

This proposition was accepted by the plaintiff, who thereupon proceeded to examine lands then owned by the United States and make cash entries of such lands as he considered it desirable to purchase. Some 2,840 acres of land were entered, but a portion of the entries were canceled by the government. Practically all of the lands were entered in October, 1888. Thereafter moneys were received from various sources by the defendant or its predecessor, during the year 1893 the business and property of H. W. Sage & Co. having been merged in a corporation known as the *Sage Land & Improvement Company*. The amounts of money so received did not, at any time down to May 1, 1902, equal the accrued interest on moneys advanced by the defendant and its predecessor under the contract. At that time a sale of 1,720 acres was made to the J. L. Gates Land Company for $5,020. On June 5, 1902, a sale of the remaining 520 acres was made for $1,980 net. The entries as to 520 acres were canceled.

On November 12, 1902, after all the lands had been sold, the defendant forwarded from Albany, New York, to the plaintiff, a statement showing the condition of their account with plaintiff as claimed by it. Such statement showed that the plaintiff's share of the net profits at this date amounted to $114.97. A check for this amount was inclosed, and the statement showed that this check covered the balance due. The only matter between the parties then unsettled related to a claim for a refund from the government amounting to $650 for canceled entries. The plaintiff acknowledged receipt of the statement without making any objection thereto and retained and used the accompanying $114.97. In the statement forwarded by the defendant to the plaintiff interest was compounded annually. Plaintiff made no objection

to the defendant's method of computing the interest until August 8, 1905, when its attention was called to the alleged mistake in the matter of computation and a request was made that the error be corrected.  The plaintiff testified, in substance, that he did not examine the statement until some little time after it was received, and that when he did examine it he discovered that interest had been compounded; that he consulted an attorney, De Alton S. Thomas, concerning the right of the defendant to compound interest under this contract, and that his attorney advised him that it would be necessary for him to see the letters constituting the contract before advising upon the subject.  Some time elapsed before plaintiff was able to find the letter of September 17, 1888.  When he did find it he placed it in the hands of his attorney and advised him to take steps to notify the defendant of his claim with reference to the interest and to adjust the same.  He did not learn until some time in 1905 that his attorney had neglected to take any proceedings with reference to the matter.

The circuit held that the plaintiff was not concluded by the account rendered, by his acceptance of the $114.97, and his silence with reference to the matter.  The account was restated by the court, simple interest only being allowed to the defendant, and judgment was awarded in plaintiff's favor. This is an appeal from such judgment.

For the appellant there was a brief by *Wickham & Farr,* and oral argument by *James Wickham.*

For the respondent there was a brief by *Bundy & Wilcox,* and oral argument by *R. P. Wilcox.*

The following opinion was filed January 5, 1909:

SIEBECKER, J.  The defendant contends that the court erred in opening the account and awarding plaintiff a recovery for a balance on a restatement of it, because the undisputed facts show that the parties settled the account between

them and that the plaintiff accepted payment from defendant
of the amount then found due him.   It is urged that it is
without dispute that the defendant on November 12, 1902,
forwarded to plaintiff a statement of the account of the busi-
ness affairs between them arising out of the land deals, and
accompanied it with the sum of $114.97 as payment of the
balance due plaintiff.   Plaintiff acknowledged receipt of the
statement and money, retained the money, and made no ob-
jection to the correctness of the account thus rendered.   There
is no controversy between the parties respecting the transac-
tion up to this point.   Without explanation and modification
of this situation the acceptance of the amount sent by defend-
ant as payment of the balance due plaintiff made the account
a stated one and operated as a settlement and payment of the
claim embraced in the account.   The plaintiff, however, al-
leges that there was no such settlement and payment of his
claim because the defendant erroneously charged an excessive
amount for interest on the sums advanced by it in payment
of the lands purchased and thereby erroneously reduced the
amount due him as his share of the net profits on the pur-
chase and sale of the lands.   He admits that within a short
time after receipt of the account and money as payment of
the balance due him on the account he was informed of
this state of the account so rendered by the defendant.   It
appears that not until August, 1905, a period of two years
and nine months, did he give defendant any notice of this
alleged overcharge in the account rendered by defendant, or
make any claim for any sum as due him above the $114.97 so
accepted by him.   He testifies that he examined the account
critically shortly after he received it and the money and after
he had acknowledged receipt thereof, that he did not offer
to return the money nor did he then inform the defendant
that he repudiated the account as incorrect, but that after
such examination he took legal advice regarding the right of
the defendant under the contract to compute the interest as

it did, and some time thereafter was informed that the defendant had illegally compounded the interest, and that he thereupon instructed his counsel to take the necessary steps to have the account corrected and to demand payment of the amount still due him. No steps were, however, taken by him or his counsel for a period of nearly three years. The duty to take the necessary steps to enforce collection of any additional sum due him rested on him, and he cannot be relieved by placing it in the control of De Alton S. Thomas, his attorney. He must be held to have sanctioned inaction by his attorney, for under the circumstances the attorney's delinquency cannot explain or justify plaintiff's silence for so long a time. Under this state of the facts the question is whether plaintiff's conduct in the matter amounts to a settlement and acceptance of the account and precludes him from opening it at this late day.

It is urged by plaintiff that he in fact never assented to a settlement and payment of the account, and hence his conduct in the matter does not warrant the conclusion that the account became stated and paid. This contention omits consideration of the account as rendered, his acceptance of the amount tendered as payment of the whole amount due him, his long silence respecting the matter, and his failure to bring it to defendant's notice. Under the circumstances such acquiescence furnishes a good basis for the inference that he assented to the settlement defendant proposed by the account rendered. Such assent is as irrevocable as if he had expressly given it. Plaintiff was in duty bound to give defendant notice of his disapproval of the account within a reasonable time. It devolved on him to exercise reasonable diligence, to give proper attention to the transaction, and repudiate the account if he desired to avoid the effect of the settlement and payment of the account proposed by defendant. He did not act with reasonable diligence and vigilance to repudiate it, and his conduct permits of but one reasonable inference, namely, that he

assented to the settlement and accepted the money tendered by defendant as payment of the balance due him. The effect of plaintiff's conduct is declared by the court in the case of *Rose v. Bradley,* 91 Wis. 619, 65 N. W. 509, where the force of the silence of a party after having received a statement of the account against him from another was considered. It is there said:

"If such other keeps the account and fails to object within a reasonable time, the facts raise a presumption or inference of acquiescence. That is all. Such presumption or inference is more or less strong according to circumstances. The neglect to return or object may be for such a length of time as to render such presumption conclusive on the question of acquiescence, so as to make an account stated."

The following cases are illustrative of this principle, which we find controls this case against plaintiff's contention: *Pabst B. Co. v. Milwaukee,* 126 Wis. 110, 105 N. W. 563; *Bostwick v. Mut. L. Ins. Co.* 116 Wis. 392, 89 N. W. 538, 92 N. W. 246; *Voss v. N. W. Nat. L. Ins. Co.* 137 Wis. 492, 118 N. W. 212.

Since, then, the account was settled and paid, no ground is shown for opening it and allowing plaintiff to charge defendant any additional sum as due him. No fraud or mistake is claimed. Under the circumstances principle and public policy demand that when the account was settled and adjusted it became conclusive on the parties. *Martin v. Beckwith,* 4 Wis. 219; *Klauber v. Wright,* 52 Wis. 303, 8 N. W. 893; *Continental Nat. Bank v. McGeoch,* 92 Wis. 286, 66 N. W. 606.

We are led to the conclusion that the court erroneously opened a stated account, and that the complaint should have been dismissed.

*By the Court.*—Judgment reversed, and the cause remanded with directions to award judgment dismissing the complaint.

BARNES, J. (*dissenting*).    The contract between the parties
was plain and unambiguous.    Under it the defendant had no
right whatever to compound interest.    Its counsel does not
claim or argue that it had such right.    The defendant suffered
no loss, wrong, or injury by reason of the failure of the plaint-
iff to object to the statement of the account as rendered.    It
does not claim any injury by reason of such failure.    There
was no controversy between the parties, before or at the time
of the remittance, as to what amount was due.    It was a mere
matter of mathematical calculation, under a plain contract, to
ascertain it.    By reason of its erroneous and unlawful compu-
tation of interest the defendant retained moneys that belonged
to the plaintiff, and which, in the exercise of good faith and
common honesty, it was bound to pay him.

Plaintiff and defendant and its predecessor had a large
number of business transactions amounting to large sums of
money and covering a period of over twenty years.    They ap-
peared to trust each other mutually.    Statements were ren-
dered from time to time, and whenever anything was found
incorrect in them it was rectified regardless of when the error
was discovered.    The plaintiff handed the statement here in-
volved to his attorney shortly after it was received, to secure
his opinion on the correctness of the computation of interest
and to collect the balance due him if any.    In view of the
course the parties pursued in their dealings it is particularly
harsh and inequitable to foreclose the plaintiff from asserting
his rights.    The check sent plaintiff did not in itself purport
to be in full of account.    If it did so purport it would make
no difference.    A receipt in full, when it is not in fact a pay-
ment in full, can always be contradicted.    This is elementary
law.    *Prairie Grove C. Mfg. Co. v. Luder,* 115 Wis. 20, 27,
89 N. W. 138, 90 N. W. 1085; *Weidner v. Standard L. &
A. Ins. Co.* 130 Wis. 10, 15, 110 N. W. 246.    The defendant
had a right to accept the check and to treat it as payment on
account.    The amount of money represented by it, and more,

was due him. This $114.97, with another small payment made on account of moneys refunded on canceled entries, represented the earnings of a large amount of labor expended by plaintiff during a period of fourteen years. The payment was delayed for several months after it should have been made.

The court holds that, by accepting the check and retaining the account without telling the defendant that he was not willing to accept less than was due, the plaintiff cannot recover. The defendant should know as well as the plaintiff that it had not paid according to its contract. But, whether the plaintiff was chargeable with legal acumen superior to that of the defendant or not, I think he should be permitted to recover.

Whether the transaction be considered from the standpoint of estoppel, of waiver, of accord and satisfaction, of an account stated, of acquiescence, of abandonment, or of a settlement, it still involves the question, Did plaintiff, by his failure to object to the accuracy of the account rendered, deprive himself of the right to collect what was justly his due? The rendering of an account, and its retention without objection after the lapse of time, becomes an account stated and *a strong proof of its correctness. Engfer v. Roemer,* 71 Wis. 11, 36 N. W. 618. A charge that, "where one man makes out an itemized statement of his accounts with another, and mails or hands it to such other, and it is retained without objection, this is in law a settlement," is incorrect. The act is not a settlement. Such facts "raise a presumption or inference of acquiescence. That is all. Such presumption or inference is more or less strong according to circumstances. The neglect to return or object may be for such a length of time as to render such presumption conclusive of acquiescence, *so as to make an account stated." Rose v. Bradley,* 91 Wis. 619, 623, 65 N. W. 509.

The cases of *Cobb v. Arundell,* 26 Wis. 553, and *Ryan D. Co. v. Hvambsahl,* 92 Wis. 62, 65 N. W. 873, hold that the sending of a statement of account by one party, and its reten-

tion by the other without objection thereto, makes an account stated. Less than two months ago this court said:

"It is quite uniformly held that, when a demand in the form of a bill or account is delivered to the debtor, his conduct with reference thereto may be significant, and his failure to object within a reasonable time be construed *prima facie* as an admission that such bill or account is correct; not at all conclusive either on the fact of admission or on the fact of correctness, but *prima facie,* subject to be overcome by other evidence." *Jones v. De Muth,* 137 Wis. 120, 118 N. W. 542, 543.

But an account stated is only *prima facie* evidence that the balance struck is correct. *Jefferson Co. v. Jones,* 19 Wis. 51. While the incorrectness of a stated account may be shown, the evidence to surcharge it should be clear and satisfactory. *Wilson v. Runkel,* 38 Wis. 526; *Marsh v. Case,* 30 Wis. 531; *Hoyt v. McLaughlin,* 52 Wis. 280, 8 N. W. 889; *Hill v. Durand,* 58 Wis. 160, 15 N. W. 390. One of the late expressions of the court as to the effect of stating an account is that it is "only *prima facie* evidence of the correctness of the balance, and not conclusive upon it," and unless such balance is struck as the result of mutual concessions and a compromise, or the acts in reference thereto create an estoppel *in pais,* it "may be impeached for mistake or *error in law or in fact* with respect to the items included in it." *Segelke & K. Mfg. Co. v. Vincent,* 135 Wis. 237, 115 N. W. 806.

In many other jurisdictions the receipt and retention of an account without comment is only *prima facie* evidence of assent to the correctness thereof. 1 Cyc. 371, and cases cited. Even a settlement deliberately made may be set aside on clear proof of fraud or mistake. *Klauber v. Wright,* 52 Wis. 303, 8 N. W. 893; *Hill v. Durand, supra.*

The contract here furnishes proof conclusive that a mistake of law was made in stating this account, if it was stated, or in making the settlement, if one was made, unless we assume that it was the purpose of the plaintiff to give something

to the defendant that did not belong to it, and that it was the purpose of the defendant to cheat the plaintiff out of something that belonged to him.

It would seem clear from the foregoing authorities that the failure of the plaintiff to object to the account did not preclude him from showing that it was erroneous. At best it was evidence tending to show assent on his part as to its correctness. But if the transaction amounted to stating an account, still the stated account was not conclusive. The fact that any weight at all should be given such retention proceeds upon the theory of an implied assent or admission that the contents of the paper are correct because not demurred to. Many courts hold that such action is no evidence of consent; others that it is weak evidence. The doctrine seems to have originated at the trial of Horne Tooke for treason (25 How. St. Tr. 1, 120), where treasonable letters found in his possession were offered in evidence against him on the theory that the receipt and retention of such letters by him without protest or objection to their contents was tantamount to an approval of such contents. Defendant's objection to the letters was not wanting in logic. The accused stated that he was afraid he was guilty of blasphemy as well as of treason, under the ruling of the court admitting the letters; that he received many curious letters that he did not answer, and that among them were some from a man named Oliver Overall, "who . . . endeavored to prove to me that he was God the Father, Son and Holy Ghost. He proved it from the Old Testament—in the first place that he was God the Father, because God is Overall; that is, God over all. He proved he was God the Son from the New Testament—'Verily, verily I am He;' that is, Veral I, Veral I, I am He. Now, if these letters written to me, which I from curiosity have preserved, but upon which I have taken no step, and to which I have given no answer, are produced against me, I do not know what may become of me." To which the chief justice replied: "If you can treat all the letters that

have been found upon you with as much success as you have these letters of your correspondent, you will have no great reason for apprehension." The English court did not hold that the receipt and retention of this letter without protest would furnish proof conclusive of the crime of blasphemy.

The evolutionary progress of the law on the subject under consideration has led to the following results: (1) Receipt and retention of a statement of account without protest raises a presumption of assent to its correctness; (2) after the lapse of an indeterminate period, if the silence is continued, the statement so furnished automatically becomes an account stated; and (3) after the lapse of another indeterminate period, the account so stated automatically becomes conclusive of the rights of the parties. The last proposition is the result of the decision in this case, and it is with this that I particularly dissent.

The cases of *Bostwick v. Mut. L. Ins. Co.* 116 Wis. 392, 89 N. W. 538, 92 N. W. 246, and *Pabst B. Co. v. Milwaukee,* 126 Wis. 110, 105 N. W. 563, rest upon an entirely different principle from that involved in this case, and I do not think they are authority for the decision here made.

DODGE, J.   I concur with the foregoing dissenting opinion of Mr. Justice BARNES.

KERWIN, J.   I concur in the foregoing dissenting opinion of Mr. Justice BARNES.

A motion for a rehearing was denied March 9, 1909.