Klauber vs. Wright, Garnishee.

## KLAUBER VS. WRIGHT, Garnishee.

*April 21 — May 10, 1881.*

FRAUD. *(1) When settlement of account may be impeached by a creditor of one party.*

GARNISHMENT. *(2) Answer and evidence of garnishee.*

1. A settlement of their accounts deliberately made by two persons, without any intention to defraud a creditor of one of them, will not be set aside in favor of such creditor without at least the clearest and most positive proof of fraud or mistake as between the parties to such settlement.
2. While a garnishee's general denial of indebtedness to his principal may be treated as a pleading, under the statute, yet where, before issue joined, he has been subjected to a long examination as to the particulars of his dealings with the principal running through a course of years, he may, in his evidence on the trial after issue joined, explain and correct mistakes in his former answers, without amending such answers as though they were parts of a pleading.

APPEAL from the Circuit Court for *Monroe* County.

Action to charge *Levi Wright* as garnishee of Curtis C. Noyes. The action against the principal debtor was commenced December 1, 1877, and judgment therein in favor of the plaintiff was rendered March 7, 1878. The action of garnishment was brought at the time the summons was served in the principal action, and the answer of the garnishee was taken orally before a court commissioner. Issue was joined on such answer, and in June, 1879, the cause was tried before a referee. He found that *Wright* was indebted to Noyes in the sum of $1,032.06, with interest from April 26, 1876, and found in favor of the plaintiff, that he was entitled to recover judgment against the garnishee for the amount of his claim against the principal defendant, not exceeding the sum above named, with costs. A motion was made to confirm the report of the referee; and, upon the hearing thereof, an order was made by the circuit court modifying such report, and directing that judgment be entered in favor of the garnishee, discharging him from liability as garnishee of the principal debtor, and

for costs against the plaintiff.   Other facts in the case will sufficiently appear from .the opinion in this court, and from the following opinion of the circuit judge, therein referred to:

"There had been mutual dealings between *Wright* and Noyes, running through many years.   In 1865 there had been a settlement.   From that time up to April 26, 1876, there had been frequent transactions between them, but no settlement. No regular books of account, nor any account of all their dealings, had been kept by either party.   On April 26, 1876, after several days spent in ineffectual efforts to adjust their mutual accounts and dealings, they agreed upon an arbitrary balance, without knowing the actual balance between them.   The bal-. ance agreed upon was in favor of Noyes, and was paid to and received by him in settlement and full satisfaction of all their dealings; after which the plaintiff loaned Noyes money at various times, taking his note with security therefor.   The terms of the settlement were reduced to writing and signed by both parties, and many of the papers relating to the matters settled were destroyed.   In fact, little remains but figures, which do not explain themselves, on scraps of paper.   But there is no dispute about the manner of making the settlement.

" The referee examined all the transactions between the parties from 1865 until the trial in 1879.   He has undertaken to do what the parties themselves, with better data, were unable to do — to state the account between them.   He reports that at the time of the settlement there was due to Noyes $1,032.06 more than the sum agreed upon by the parties.   He finds that the settlement in fact hindered and delayed the creditors of Noyes, and was for that reason fraudulent and void as to them, and that the plaintiff should recover the sum so found due to Noyes.

" The referee does not find that by the making of the settlement either party intended to hinder, delay or defraud the creditors of Noyes; in fact there is an entire absence of evidence tending even to prove such an intention.   It is evident

from the testimony that each party was trying to make the best settlement for himself that he could, without reference to actual or possible creditors of Noyes. Any presumption of intended fraud towards the creditors of Noyes is repugnant to all the facts which occurred at the settlement.

"But it is said that the settlement did in fact hinder, delay and defraud the creditors of Noyes. That may be so. It may have been an improvident settlement for Noyes to make, and may have diminished his ability to pay his debts; still it may have been a lawful settlement for him to make. It is evident that before the settlement he had engaged in other improvident transactions, whereby his ability to pay his debts had become impaired even to bankruptcy. It will scarcely be claimed that those transactions may all, or any, be set aside at the instance of creditors, merely because they operated to hinder, delay and defraud creditors in the collection of their just debts. Nor can the settlement be set aside on that ground merely. Such a rule would overturn all transactions of unsuccessful business men, and would be destructive of all business confidence.

"So, probably, this case must turn upon the question whether the settlement was binding upon Noyes; for if the settlement was not void as against creditors, the plaintiff is in no better condition to recover than Noyes would be. Drake on Attachment, 462, 458, 457, note 1; *St. Louis v. Regenfuss*, 28 Wis., 144; *Gage and another v. Chesebro*, 49 Wis., 486. Possibly his condition is not so good as Noyes's would be; for even if the settlement were voidable by Noyes for fraud, or subject to correction for mistake, possibly the plaintiff would not have the right, uninvited, to make the election for Noyes either to avoid or correct it. *Brigham and others v. Fawcett*, 4 N. W. Rep., 272; 2 Parsons on Con., 781 et seq.; *Grant v. Law*, 29 Wis., 99; *Keyes v. M. & St. Paul R'y Co.*, 25 id., 691. But assuming that the plaintiff may re-

cover if Noyes could, it becomes necessary to examine the ground upon which Noyes could avoid the settlement.

" The referee does not decide whether the settlement was voidable by Noyes for any reason. His finding is, that the settlement, 'being based upon an inadequate consideration, and upon mistake and ignorance on the part of Noyes as to the matters involved, was and is fraudulent as to the creditors of Noyes.' This is inaccurate. It does not follow, if the settlement was based upon an inadequate consideration and upon mistake and ignorance on the part' of Noyes as to the matters settled, that the settlement would be void as to the creditors of Noyes; such facts would render the settlement voidable by Noyes, and, it is assumed, would leave the matter settled open to readjustment at the suit of creditors in garnishment to the same extent that it might be readjusted at the suit of Noyes. This is upon the theory that the settlement is not conclusive upon Noyes, and not in the least because it was fraudulent as to Noyes's creditors.

" If, notwithstanding the settlement, *Wright* owes Noyes, that debt may be garnished by the creditors of Noyes; but this can be only on the ground that the settlement is voidable by Noyes. Nor is it accurate to say that the settlement was based upon an inadequate consideration. That mutual claims are adjusted or compromised is sufficient consideration for a settlement. But if there was a mistake in the settlement, or if Noyes was ignorant of some fact material to the settlement, and was thereby misled to his detriment, he would have a remedy. But unless fraud on the part of *Wright* in the procurement of the settlement is proved, the whole account cannot be opened to readjustment; for in that case Noyes would have only the right to correct the mistake — to surcharge and falsify the account. *Bowen v. Horn*, 2 Barb., 586. The action to surcharge or falsify an account is an equitable action, which probably cannot be maintained by a creditor of Noyes.

So the question in this case seems really to be, whether the settlement was voidable by Noyes for the fraud of *Wright* in procuring it to be made.   It will be assumed, however, for the purposes of the decision, that the creditors of Noyes might avoid the settlement for mistake.

"The parties in making this settlement never understood that they had ascertained the actual state of their dealings, nor the actual balance of account between them; but after comparison, negotiation and failure to ascertain and agree upon the true balance, they agreed upon an arbitrary sum as the true balance.   This was a legitimate way of settling disputed accounts, and cannot be disturbed merely because the balance agreed upon was not the real balance; that would not be a mistake within the meaning of the law which permits mistakes in settlements to be corrected.

" All that is necessary to make a settlement conclusive is, that the claims settled should have been in some doubt, and their validity controverted; that they should have been asserted in good faith; and that there should have been no fraud or undue advantage or mistake in the settlement.   By mistake is meant a detrimental mistake, or ignorance of fact by which a party was actually deceived and misled, to his prejudice, and without which he would not have entered into the settlement.   *Kercheval v. Doty*, 31 Wis., 476.

" In this case it does not appear that *Wright* was better informed of the real state of the account between them than Noyes was.   Nor does it appear that *Wright* made any misstatement, or that Noyes was misled or deceived as to the true state of accounts.   In fact the contrary appears.   Noyes testifies that at the settlement *Wright* presented a statement of his account, which showed a balance in his (Noyes's) favor of more than $1,300, but that *Wright*, for some reason which Noyes does not explain, would not agree upon that sum as the true balance between them.   *Wright* explains the reason to have been, that he had some claims against Noyes for some

deductions on account of some paper which he had received from Noyes in place of Noyes's paper, which was drawing a higher rate of interest. Noyes also says that he knew the settlement was not a fair one; that he knew that *Wright* owed him over $1,300 (about the sum the referee found to have been due him at that time), and that, knowing all this, he made the settlement because it was the best settlement he could get.

"Now it is clear upon his own statement that there was no such mistake or ignorance upon the part of Noyes as misled him to his prejudice, or without which he would not have entered into the settlement. If he was ignorant or mistaken as to the matters settled, such ignorance or mistake related only to the details and not to the result or general sum of the accounts, and could not mislead him to his prejudice.

"And on the other hand *Wright* testifies and claims that the settlement was fair towards Noyes. And he is corroborated in his claims for the deductions named, by evidence of Noyes's admissions.

"To summarize: The accounts which had been kept were imperfect; the parties disagreed as to the balance between them. Noyes claimed a large sum, *Wright* admitted a small sum. Rather than bring a suit, Noyes accepted the small sum in full settlement. The settlement was not procured by fraud of *Wright*, nor by the mistake or ignorance of Noyes, nor by undue advantage, unless to refuse to settle except upon his own terms is to take undue advantage; and so uncertain is human memory when groping back over so many years and unassisted by memoranda, that it certainly is not certain that the settlement was an unjust one.

"It requires a strong case to open or set aside a settlement; for principle and public policy alike require that when parties, after a full and fair opportunity of examining and deciding upon their mutual accounts, have adjusted and settled them, that settlement should be conclusive. Any other rule would be dangerous and oppressive, and often work great injustice.

*Martin v. Beckwith,* 4 Wis., 219; *Marsh v. Case,* 30 id., 531; *Kercheval v. Doty,* 31 id., 476; *Wilson v. Runkel,* 38 id., 526.

"No practice could be more dangerous than that of opening accounts which the parties who could best understand them have themselves adjusted, on suggestion supported by doubtful or even probable testimony. The whole labor of proof lies on the party objecting to the account, and errors which he does not plainly establish cannot be supposed to exist. 4 Cranch, 306; *Wilde v. Jenkins,* 4 Paige, 481; *Lockwood v. Thorne,* 11 N. Y., 170; *Phelps v. Baldwin,* 2 Edw. Ch., 1. It is not incumbent on the defendant to show that the settlement was correctly made, nor to furnish upon the trial data from which the referee could see how the settlement was made; but it was for the plaintiff to show wherein the mistake consisted, to point it out distinctly, and to furnish the data by which it could be corrected. And it is not sufficient to set aside the settlement, that it is difficult and perhaps impossible, from the facts found, to see how the parties settled as they did, especially since much of the data used upon the settlement are destroyed and lost. *Chubbuck v. Vernam,* 42 N. Y., 432.

"Now it certainly cannot be said that the evidence establishes clearly that there was a mistake made in this settlement. It seems to establish the contrary. On the plaintiff's theory of the evidence, Noyes was not mistaken in reference to the amount due him. On the defendant's theory, the settlement was not unfair.

"Conceding all that is possible to the plaintiff, the evidence makes it no more than probable that a mistake occured; it falls far short of demonstrating it. If after all the case is doubtful, it is in favor of the defendant.

"Neither party on the trial claimed to know or remember all the items included in the settlement. The testimony is voluminous. The argument is ingenious and plausible; and even after argument there remains doubt. The settlement

cannot be set aside on merely probable testimony. A mere preponderance is not sufficient.

"The defendant was not estopped from correcting his testimony given on his first examination. He answered upon his oath that he was not indebted, and set up the settlement. All the rest was evidence merely; and if parts of it were mistaken, it was right to correct it upon the trial. The law seeks truth; it would not inflict a forfeiture upon the defendant because, in attempting to recall half-forgotten transactions of remote years, his memory was sometimes at fault.

"The referee errs in finding that there was a mistake in the settlement, and that it was fraudulent as to creditors of Noyes. The report should be modified as to these particulars, and judgment should be entered for the defendant."

From the judgment entered in accordance with the above opinion, the plaintiff appealed.

For the appellant there was a brief by *Flanders & Bottum*, and oral argument by *Mr. Flanders.* They contended, among other things, that it was error to permit the garnishee, upon the trial, to contradict the admissions in his answer taken before the commissioner. *Wanzer v. Howland*, 10 Wis., 8; *Sturtevant v. R. R. Co.*, 11 id., 63; *Denton v. White*, 26 id., 679; *Næsen v. Port Washington*, 37 id., 168. The rule is settled in regard to ordinary pleadings, and should apply with equal force to the answer of a garnishee, which is the only pleading on his part in the case. Relying upon such admissions, the plaintiff took issue upon the answer and incurred large expense in preparation for the trial of such issue. The principle of estoppel is applicable. See *Lewis v. Prenatt*, 24 Ind., 98; *Horn v. Cole*, 51 N. H., 287. The testimony shows that at the time of the pretended settlement, April 26, 1876, the garnishee was owing the principal debtor more than $1,400; and the release in consideration of $375 was fraudulent as against the creditors of such principal debtor. It is not necessary to prove an actual intent to hinder, delay or defraud creditors.

Intent can generally only be shown by showing acts and declarations. But the law presumes that acts which necessarily hinder or defraud creditors were done with a fraudulent intent. Though the debtor may do what he does with the highest motives, yet if a transfer of property is voluntary and hinders or delays creditors, it is fraudulent. The presumption in such case is conclusive. *Carlisle v. Rich*, 8 N. H., 44; *Freeman v. Pope*, L. R., 5 Ch. App., 538; *Norton v. Norton*, 5 Cush., 524; *Potter v. McDowell*, 31 Mo., 62; *Babcock v. Eckler*, 24 N. Y., 623; *Freeman v. Burnham*, 36 Conn., 469; *Van Wyck v. Seward*, 18 Wend., 375; *Reese River Mining Co. v. Atwell*, L. R., 7 Eq., 347; *Black v. Sanders*, 1 Jones (N. C. L.), 67; *Hunters v. Waite*, 3 Gratt., 26; Bump on Fraud. Con., 281-3. A voluntary conveyance by a person who is indebted, is a well recognized badge of fraud. Its natural tendency is to hinder, delay and defraud creditors; and the burden of proof is thrown upon the donee to repel the presumption of a fraudulent intent. Bump on Fraud. Con., 284, 286; *Baxter v. Sewell*, 3 Md., 334; *S. C.*, 2 Md. Ch., 447; *Spindler v. Atkinson*, 3 Md., 409; *S. C.*, 1 Md. Ch., 507; *Ellinger v. Crowl*, 17 Md., 361; *Hunters v. Waite*, 3 Gratt., 26; *Crossley v. Elworthy*, L. R., 12 Eq., 158; *Wilson v. Buchanan*, 7 Gratt., 334; *Woolston's Appeal*, 51 Pa. St., 452; *Crumbaugh v. Kugler*, 2 Ohio St., 374; *Reynolds v. Lansford*, 16 Tex., 286; *Raymond v. Cook*, 31 id., 373. A fraudulent cancellation of indebtedness, or of any part of an indebtedness, does not release the debt. *Everett v. Read*, 3 N. H., 55; *Martin v. Root*, 17 Mass., 222; *Wise v. Tripp*, 13 Me., 9; *Wright v. Petrie*, 1 S. & M. Ch., 282; *Ripley v. Severance*, 6 Pick., 474. If the garnishee relies upon his release from the principal debtor, he is bound to show affirmatively that there was a valid consideration for it, and that the release was not merely formal but *bona fide*. *Giddings v. Coleman*, 12 N. H., 153; *Maher v. Brown*, 2 La., 492; Drake on Attach., sec. 523.

*John Barker*, for respondent.

Cole, C. J.   In this case we have been favored with the opinion of the learned circuit judge, given on the motion to confirm the report of the referee, and on sustaining the garnishee's exceptions to that report.   This opinion contains such a full, clear and satisfactory discussion of the questions of law and fact involved in the case, that it might, in the main, be adopted as presenting our own views on these questions.   The fact that a settlement was made between the garnishee and principal debtor, Noyes, on the 26th of April, 1876, is too conclusively established to admit of doubt.   A memorandum in writing of such settlement was drawn up and signed by the parties at the time, which memorandum states that on that day all book accounts and all other demands were settled between them "except the wood account."   The writing states the amount which was found due Noyes, and the manner in which the same was to be paid.   Now a creditor of Noyes attempts to overhaul and set aside this settlement, on the ground that it was made in fraud of his rights.   There is not the least scintilla of evidence that either party, in making the settlement, intended to defraud any one.   So far as creditors are concerned, the settlement seems to have been made in perfect good faith, for the purpose of adjusting the mutual dealings and business transactions of the parties to it.   But it is said that the appellant, at this time, was a creditor of Noyes, and that Noyes was in failing circumstances, to the knowledge of the garnishee, who obtained an advantage in the settlement — in other words, that several hundred dollars more were actually due Noyes than were stated to be due him in the memorandum.   But the learned circuit judge found that at the time of making the settlement neither of the parties to it acted under any mistake of fact as to the items or matters included in the settlement, or omitted therefrom, or as to the correctness of any such item.   This being the case, the learned judge held that, even if Noyes made an improvident settlement — one which diminished his ability to pay his debts,— this afforded

no ground or reason for setting the settlement aside at the instance of a creditor of one of the parties to it.  It seems to us there can be no doubt about the soundness of that proposition; for any other rule would, in the language of the circuit judge, tend to overturn all the transactions of an unsuccessful business man, and would be destructive of all confidence among men.  But we remark further that we see no ground for holding, upon the evidence, that the settlement should be set aside either on the application of Noyes or of a creditor of his.  The burden was upon the appellant of impeaching the settlement by showing fraud or mistake therein.  There was no sufficient evidence in this case to authorize the court to open it.  This court has more than once recognized and enforced the elementary doctrine that " the evidence to surcharge an account should be clear and satisfactory."  *Marsh v. Case*, 30 Wis., 531.  " Principle and public policy alike require that when parties, after a full and fair opportunity of examining and deciding upon their mutual accounts, have adjusted and settled them, the settlement should be conclusive.  Any other rule would be dangerous and oppressive, and often work the greatest injustice.  *Martin v. Beckwith*, 4 Wis., 219; *Wilson v. Runkel*, 38 Wis., 526.  In this case, the proof shows that the settlement was deliberately made after a full examination of the accounts, and we see no reason for affirming that it was not fairly made.  Even if we were to go behind the settlement, and examine into the state of the accounts and business transactions, we should have difficulty in arriving at the conclusion that the garnishee obtained any advantage in the settlement, or was actually owing Noyes any more than the memorandum stated was due him.  But we do not intend to go behind the settlement, for its substantial fairness is not impeached.  And we content ourselves with stating the result at which we have arrived after a consideration of the testimony, without discussing the evidence in detail.  The case affords a fine illustration of the wisdom of the rule that a settlement once deliberately

made is not to be opened except upon the clearest and most positive proof of fraud or mistake therein. The business transactions investigated by the referee extended over a period of twelve or fourteen years. No regular books of account were kept by either party. The only account or memoranda of their dealings were kept in little diaries or upon loose papers. On the settlement made in April, 1876, many of these papers were destroyed. Now, on the data or memoranda presented on the trial, it is impossible to get a clear and satisfactory statement of the real state of the account between the parties. We certainly cannot assume or conclude, from anything appearing in the exhibits or testimony, that any mistake was made in the settlement which would justify us in opening it; and it must stand.

The garnishee was first examined before a commissioner. He commenced his examination with a positive denial that he owed Noyes anything, or that Noyes had any just claim upon him. The examination of the garnishee before the commissioner covers more than three hundred folios, questions and answers. The plaintiff was not satisfied with the answer of the garnishee, and took issue thereon. On the trial of that issue, the garnishee was permitted to explain, contradict or qualify admissions and statements made by him before the commissioner, against the objection of appellant. It is now claimed that it was error to allow the garnishee to do this, because his whole examination before the commissioner was in the nature of a pleading, upon which issue had been joined. We do not think the whole examination before the commissioner should be treated as a pleading which the garnishee was bound by until it was amended by leave of court. The general denial of indebtedness might, with liberality, be deemed a pleading, perhaps. All the rest was mere examination to get at the real facts; and the garnishee had the undoubted right to correct, on the trial, any mistakes which he had made in his examination before the commissioner. The circuit court

so ruled, and there can be no doubt of the correctness of that view. Of course it was the duty of the garnishee to answer fully and truthfully all proper questions put to him on the first examination. But, when the inquiry was as to business transactions extending over a series of years, which had once been settled, and many papers relating to these dealings had been destroyed, it is not surprising that the garnishee would make mistakes when he was attempting to give a history of them. These observations are all that we deem it necessary to make in the case.

*By the Court.*— The judgment of the circuit court is affirmed.