CHICAGO & N. W. RY. CO. v. WILCOX.

(Circuit Court of Appeals, Eighth Circuit. July 14, 1902.)

No. 1,686.

1. RELEASE OF CLAIM—PERSONAL INJURY—CONTRACT OF SETTLEMENT—COMPROMISES FAVORED BY COURTS.

In the absence of fraud or mistake, an agreement of settlement and release of an unliquidated or disputed claim as conclusively estops the parties from reviving and litigating it as a final judgment. Such agreements of compromise are uniformly favored and upheld by the courts.

2. SAME—FRAUD AND MISTAKE—PROOF MUST BE CLEAR AND CONVINCING.

A mere preponderance of testimony is insufficient to establish such fraud or mistake as will warrant the avoidance of a written agreement of settlement and release. The proof must be clear, unequivocal, and convincing to have this effect.

3. SAME—MISTAKE OF FACT—MISTAKE IN OPINION AS TO EFFECT OF INJURY.

A mistake of a past or present fact may warrant a rescission of a contract of settlement and release. But a mistake in opinion or belief relative to the future duration or effect of a personal injury, or a mistake in prophecy or opinion as to an uncertain future event, is not a mistake of fact, and is no ground for the avoidance of a release or of a contract of settlement.

4. SAME.

Complainant compromised and released a claim for a broken hip. She knew when she settled that her hip had been broken, and that it was a bad break. She was induced by the statement of her own physician, who was also the company's physician, to believe, and did believe, that she would be well within a year, and she settled upon that basis. She was mistaken, and her injury and disability turned out to be permanent. Held, her mistake was not a mistake of fact, but a mistake in opinion or belief as to a future event, and it furnished no ground for an avoidance of her release.

(Syllabus by the Court.)

Appeal from the Circuit Court of the United States for the Northern District of Iowa.

This is a suit in equity to rescind a release of a claim for personal injury on the ground of fraud, undue influence, and mistake. The complainant, Lucy A. Wilcox, was a widow, and she had been engaged in the occupation of nursing for 10 years. She was 65 years of age. On December 22, 1898, as she was standing in a passenger car of the defendant, it was suddenly started, and she fell and broke the neck of the femur of her left leg. One week after her injury she compromised her claim against the railway company, and executed a written release of it for $600 and the agreement of the company to pay her doctors' bills. On March 14, 1901, she exhibited her bill in this suit to rescind this release. In this bill she alleged that her release was obtained by the fraud, undue influence, and circumvention of the agents of the defendant, in that the physician of the latter, who was attending her, and the agent of the company informed her that her injuries were temporary, and that she would be well and able to attend to her ordinary avocation within a year, when the injuries were permanent, and she never could recover. She averred that she did not know the serious character of her injury, but relied on the statement of the physician, and was induced thereby to make the settlement and to execute the release. There were general averments of fraud on the part of the company and of incompetence to contract on the part of the complainant, but these allegations were not sustained by the evidence, and the answer denied all the equities of the bill. After a hearing the court below found that the complainant was competent to make the settlement when she signed the release, and that the agents of the defendant were not guilty of any fraud, deceit, or wrongdoing in procur-

ing it, but that the release was executed under a mistake of the probable time she would be incapacitated by her injury. and on account of this mistake it rendered a decree rescinding the contract of settlement. 111 Fed. 435. The railway company has appealed from this decree.

N. M. Hubbard (Frank F. Dawley and C. E. Wheeler, on the brief), for appellant.

J. R. Caldwell (C. E. Walters, on the brief), for appellee.

Before SANBORN and THAYER, Circuit Judges, and LOCH-REN, District Judge.

SANBORN, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The policy of the law has always been to promote and sustain the compromise and settlement of disputed claims. It loves peace, hates broils and dissensions, and discourages the prolongation of litigation and the revival of controversies which have once been closed. The judgment of a court settles the claims submitted to it, and estops the parties from again litigating them after they have been adjudicated. In the absence of fraud or mistake, an executed agreement of settlement of an unliquidated or disputed claim constitutes as conclusive and as effectual an estoppel against the parties to the compromise from again litigating the claim thus settled as the final judgment of a court of competent jurisdiction, to the effect that the rights of the parties are as· they are set forth in the agreement; and such a contract is always upheld by the courts. Kercheval v. Doty, 31 Wis. 476, 484; Bank v. McGeoch, 92 Wis. 286, 313, 66. N. W. 606, 614; Hennessey v. Bacon, 137 U. S. 78, 11 Sup. Ct. 17, 34 L. Ed. 605; Van Trott v. Wiese, 36 Wis. 439; Zimmer v. Becker, 66 Wis. 527, 29 N. W. 228; Woodford v. Marshall, 72 Wis. 132, 39 N. W. 376. Nor will such agreements be lightly disturbed upon confused, conflicting, or uncertain evidence of fraud or mistake. The burden is always upon the assailant of the contract to establish the vice which he alleges induced it, and a bare preponderance of evidence will not sustain the burden. A written agreement of settlement and release may not be rescinded for fraud or mistake, unless the evidence of the fraud or mistake is clear, unequivocal, and convincing. Chicago, St. P., M. & O. Ry. Co. v. Belliwith, 28 C. C. A. 358, 361, 83 Fed. 437, 440; Insurance Co. v. Nelson, 103 U. S. 544, 548, 549, 26 L. Ed. 436; Maxwell Land-Grant Case, 121 U. S. 325, 381, 7 Sup. Ct. 1015, 30 L. Ed. 949; Howland v. Blake, 97 U. S. 624, 626, 24 L. Ed. 1027; Insurance Co. v. Henderson, 16 C. C. A. 390, 392, 69 Fed. 762, 765. Again, it is not every mistake that will lay the foundation for the rescission of an agreement. That foundation can be laid only by a mistake of a past or present fact material to the agreement. Such an effect cannot be produced by a mistake in prophecy or in opinion, or by a mistake in belief relative to an uncertain future event. A mistake as to the future unknowable effect of existing facts, a mistake as to the future uncertain duration of a known condition, or a mistake as to the future effect of a personal injury, cannot have this effect, because these future happenings are not facts, and in the nature of things are not capable of exact knowledge; and everyone who contracts in reliance upon opinions or beliefs

concerning them knows that these opinions and beliefs are conjectural, and makes his agreement in view of the well-known fact that they may turn out to be mistaken, and assumes the chances that they will do so. Hence, where parties have knowingly and purposely made an agreement to compromise and settle a doubtful claim, whose character and extent are necessarily conditioned by future contingent events, it is no ground for the avoidance of the contract that the events happen very differently from the expectation, opinion, or belief of one or both of the parties. Kowalke v. Light Co. (Wis.) 79 N. W. 762, 764, 74 Am. St. Rep. 877; Bank v. McGeoch, 92 Wis. 286, 313, 66 N. W. 606, 614; Pom. Eq. Jur. § 855; Beach Mod. Eq. Jur. §§ 43, 56; Seeley v. Traction Co., 179 Pa. 334, 338, 36 Atl. 229; Homuth v. Railway Co., 129 Mo. 639, 646, 31 S. W. 903; Klauber v. Wright, 52 Wis. 303, 314, 8 N. W. 893.

In view of these indisputable principles of the law, is the evidence in this case clear and convincing that the complainant was induced to compromise her claim and to execute her release by a mistake of a past or present fact material to her contract? She was 65 years old. She had been a nurse for 10 years, and had frequently tended the patients of Dr. Thompson. Dr. Thompson had been and was her physician. At the same time he was the physician of the railway company. Dr. Schultz attended her the first day or two after the accident, and Dr. Thompson from that time until she was able to be taken from her bed. She was told on the first or second day after her injury that she had a fracture of the neck of the femur. Both the doctors told her that it was a bad break. She was taken from a neighboring town to her home, and her hip bone was set by Dr. Thompson, and then she lay in bed awaiting the union of the broken bone until after she made her settlement. One week after the accident, the agent of the railway company and Dr. Thompson went to her home, and the agent told her that she really had no claim against the railway company, but that it would give her $300 for a release. Her sister, Mrs. Blodgett, was her nurse. Mrs. Blodgett told her not to settle until later, when she would learn more definitely how serious her injury was to be. Dr. Thompson and Mr. Brokhausen, a friend, had previously given her the same advice. After a conversation of more than two hours, during which the injury and the probable duration of her disability to pursue her occupation were discussed, and during which she refused the offer of $300, an agreement of compromise was made, to the effect that the company should pay her $500, should pay her nurse, Mrs. Blodgett, $100, and should pay her doctors' bills. The sum of $500 paid to the complainant was reached by a computation of the loss of her wages at the rate of $10 per week for about a year. She executed a written contract, which was read to her, and which in terms released the company from all claims which she then had, or thereafter might have, by reason of the injuries she received from the accident on December 22, 1898, in which her left hip was fractured. The company took the release, and paid the consideration named in it. The injury of the complainant proved to be permanent. There is no dispute in the testimony about the facts which have now been recited, but the evidence is conflicting relative to those yet to be detailed.

Mrs. Wilcox testified that Dr. Thompson and the agent of the railway company told her, during the negotiations on the day she made the settlement, that there was no doubt but that she would be well in a year. She testified that she relied upon and believed this statement, and that she compromised her claim upon the understanding that she would be cured in a year, and that she would not have settled it if she had not so believed. She testified that she did not know that the injury was permanent, and that she did not know how serious it was. Her sister, Mrs. Blodgett, testified that Dr. Thompson said "that he didn't see anything to hinder why she could not be up and around within a year if she followed his directions"; that he did not see why she should not be well in a year, without something unlooked for set in, if his directions were followed. The agent of the company testified that he could not recollect any statement by the doctor to the effect that the complainant would be well within a year, and that he thought he should have remembered it if it had been made. Dr. Thompson testified that the fracture of the neck of the femur in a person 65 years of age is generally a permanent injury, and that during the negotiation "the question was asked me how long I thought she would be incapacitated, and I said that she would not be able to do anything for at least a year; the injury was very slow to repair, if it did repair, and that she could not expect to be able to do anything inside of that time, and that there was no certainty of her ever entirely recovering; that those injuries resulted generally in a permanent disability. Q. Did you tell her at any time in the course of that interview that there was no doubt she would be well within a year? A. No, sir. Q. Did you ever tell her that at any time before the day of the settlement? A. No, sir; I had told her of the seriousness of that injury, and that also the better plan would be for her to wait until she saw the extent of that injury before making the settlement." There is other testimony in the record, but none which can vary the conclusion which that to which reference has been made compels.

The difference between the testimony of Mrs. Wilcox and Doctor Thompson relative to his statement of the probable duration of her disability is slight, and capable of a rational explanation. He says he told her that she would not be able to do anything for a year; that she could not expect to return to work within that time; that there was no certainty of her entirely recovering; and that injuries like hers generally resulted in permanent disability. She testifies that he told her she would be well in a year. When the circumstances which surrounded these parties and the testimony are considered, they strongly point to the conclusion that she was mistaken in this statement, that she caught the hope that she might be able to return to her work in a year which the doctor's words held out to her, and meditated upon it until it became transformed in her mind, and thought into a positive promise to that effect. The acts and testimony of the doctor impress one with his candor, faithfulness, and truth. He advised his patient to wait until she saw the extent of the injury before she made her settlement. This advice was in itself a fair warning that the duration of the disability and the effects of the accident could not then be fully determined. It is almost common knowledge among laymen,

as well as among members of the medical profession, that a bad break of the neck of the femur of a person of advanced age ordinarily results in a permanent disability. It is very improbable,—indeed, in the light of the testimony in this record, of the evident loyalty of the doctor to his patient, of his candor, and of the reasonableness and probability of his story, it is incredible,—that he told the complainant that her disability would undoubtedly cease within 12 months. The complainant has not established her charge here by that clear, convincing, and unequivocal testimony which is essential to sustain a suit for the rescission of a written agreement of compromise.

There is another reason why she is not entitled to a decree in this suit. It is that if the doctor made the statement, and if she believed it, these facts would not sustain a cause of action for rescission. It is a mistake as to the existence of a past or present fact material to a contract, and that alone, that will warrant its rescission on the ground of mistake. Conceding, for the moment, that the doctor and the agent told the complainant that there was no doubt that she would be well in a year; that she believed this statement; that she relied upon it, and that she has never recovered,—still these facts do not establish a mistake of fact which will warrant the avoidance of a solemn agreement of settlement. The mistake which they established was a mistake in prophecy, in opinion regarding the happening of a future event on the part of the doctor and of the agent, and a mistake in belief as to what the future had in store for her on the part of the complainant. The future duration of the disability, the future effects of the injury, were not matters of fact, but matters of conjecture, of opinion, of belief. The only material facts which conditioned the contract of compromise were the injury which the complainant had received and the acts of the railway company which caused it. These the complainant knew as well on the day she signed the release as she has ever known them. The future duration and the ultimate effects of the injury were unknown and unknowable future events, a mistake concerning which was a mere mistake of opinion or of belief, and not a mistake of fact. When the complainant signed her release, she knew that her hip had been broken, that the break was a bad one, that the neck of the femur was fractured, and that the injury had been caused by the sudden start of the passenger car in which she was standing. These were all the material facts conditioning her agreement of settlement. If she believed that she would be well in a year, she coud not have failed to know that there could be no certainty that this belief was well founded. It is common knowledge, with which all must be charged, that the future effects of a broken bone are uncertain, contingent upon many conditions, and unknowable. The physical and mental condition of the sufferer, the state of his vital organs, his age, his habits of life, the character and temperament of his nervous system, and many other conditions that it is impossible to enumerate or even to conceive, inevitably affect the duration and the character of his disability and the amount of his suffering. Ignorance of the duration of the disabilities and of the ultimate effects of the injuries always exist where compromises are made before a complete recovery is effected. The cases are doubtless rare where the duration of

the disability corresponds with the prophecy of the physician or with the belief of the parties when settlements are made. But compromises and releases are not voidable on this account, for the reason that the parties to them know the uncertainty of these future events, and by the very fact of settlement before they develop agree to take the chances of their effects. Their mistakes relative to the future duration of the disabilities and the future effects of the personal injuries that form the subjects of their contracts are mistakes of belief, and not of fact, and form no basis for the avoidance of their contracts. Such was the mistake under which the complainant labored. It was a mistake in the opinion of the doctor and in the belief of his patient with reference to unknowable future events. It was not a mistake of a past or of a present fact, and it presents no ground for a rescission of this release.

In Kowalke v. Light Co. (Wis.) 79 N. W. 762, 765, 74 Am. St. Rep. 877, a woman was injured in jumping from a car, and she settled with the company in the belief that she was not pregnant, and that her injury would not produce a miscarriage. She was mistaken, and suffered a miscarriage shortly after the settlement. She sued the company for her damages, and sought to avoid her release for a mistake of fact. The supreme court of Wisconsin refused to permit her to recover, and said:

"It is probably true, in the great majority of personal injury cases, that the effect which the injuries received may have as to time of disability, quantum of suffering, and the like, may be modified by the physical or mental condition of the injured party. For example, a predisposition to rheumatism would be a condition likely to enhance the subsequent effects of an injury; especially a dislocation or other injury to a joint. A disturbed condition of the system might prevent the reuniting of a broken bone, otherwise practically certain. A predisposition to nervous troubles might vastly multiply the effects of slight spinal injury. So that if the mere ignorance of such surrounding conditions can suffice to render ineffective a settlement, because after events indicate that the amount paid is inadequate, few compromises of the damages from personal injury could be relied on. Compromise is highly favored by the law, and any rule or doctrine by which the fair meeting of the minds of the parties to that end, in the great majority of cases which arise in human affairs, must fail to be permanent or effectual to settle their rights, is contrary to the whole spirit of the law, and should not be adopted. The question in each such case is, did the minds of the parties meet upon the understanding of the payment and acceptance of something in full settlement of defendant's liability? If they did, without fraud or unfair conduct on either side, the contract must stand, although subsequent events may show that either party made a bad bargain, because of a wrong estimate of the damages which would accrue. Seeley v. Traction Co., 179 Pa. 334, 338, 36 Atl. 229; Homuth v. Railway Co., 129 Mo. 629, 31 S. W. 903; Klauber v. Wright, 52 Wis. 303, 314, 8 N. W. 893."

In Homuth v. Railway Co., 129 Mo. 629, 645, 31 S. W. 903, the plaintiff had sprained her ankle in the defendant's car. The company's physician and her own physician told her that she would be up and able to pursue her customary avocation in 14 days. In reliance upon this statement, she settled with the company upon that basis. It was several weeks before she sufficiently recovered to pursue her usual occupation. She sued the company for her damages, and undertook to avoid her release on account of the statement of the doctors and her mistake as to the duration and effect of her injury. The supreme

court of Missouri directed a judgment for the defendant, held that the mistake of the doctors and of the patient was not a mistake of fact, but of opinion and of belief, and said:

"The question could not have called for more than opinion from the surgeon as to the probable duration of her trouble, for plaintiff must have known, as well as the surgeon, that when an injury of that kind will become entirely well must depend upon many conditions, more in the knowledge and control of plaintiff than in that of the surgeon whose opinion is sought. Plaintiffs must know that there are no fixed rules in surgery by which the day, week, or month can be calculated for the recovery of an injury to a member of the body under any and all circumstances. Constitutional infirmities, hidden maladies, unknown to physician or surgeon, special manner of treatment, the nervous temperament, the mental and physical idiosyncrasies of the patient, all constitute elements in the calculation (or, more properly said, the guess) of time when a given injury by way of a strain or injury, of the kind received by Mrs. Homuth, will be entirely restored. All that can be said by the physician is 'that, all things being favorable, as I now understand the situation, it is my judgment that this or that injury will probably be well in one or two or three or more weeks or months.'"

The decree below must be reversed, and the case must be remanded to the circuit court, with directions to dismiss the bill; and it is so ordered.

THAYER, Circuit Judge. I concur in the view expressed in the foregoing opinion that the evidence which is relied upon by the complainant below for the purpose of showing that she was unduly influenced and induced to execute a release of her claim against the railroad company, under a false impression as to the extent of her injuries, which was superinduced by misleading statements of the company's surgeon and claim agent, is altogether too uncertain, conflicting, and unsatisfactory to warrant a court in setting aside a release, which seems to have been executed by the complainant after due deliberation, and with abundant opportunity to obtain further advice if she desired it. As the law favors the compromise of doubtful claims, such as the one here involved, the settlement in question ought not to be annulled, except on clear proof that it was obtained either by imposition or fraud, or while the complainant was laboring under some serious mistake of fact, for which the railroad company was in some measure responsible. The testimony does not bring the case at bar within the rule. It does not disclose any circumstances of imposition or fraud, nor does it show with any certainty that any statements were made by Dr. Thompson, the company's surgeon, concerning the extent of the complainant's injuries and the period of her probable disability, which should have misled her. While I agree to the reversal of the judgment below on the ground last indicated, namely, that the testimony is insufficient to annul the release on the ground of fraud or mistake, yet I do not concur in the view which is further expressed in the opinion in chief, that the statement imputed to Dr. Thompson, even if it was made and relied upon, would not suffice to invalidate the settlement because it was a mere opinion or prophecy. I conceive that if Dr. Thompson, for the purpose of inducing a settlement favorable to the defendant company, did advise the complainant that she would doubtless be well within a year, when he had no expectation that she

would recover, and the complainant, in reliance upon his superior professional knowledge, was thereby induced to make the settlement, it might and ought to be vacated by a court of equity, notwithstanding the fact that the advice so given was in the nature of an opinion or prophecy. Dr. Thompson occupied a confidential relation to the complainant. She was at the time a patient under his personal care, and a court of equity should not permit one standing in that confidential relation, who was also in the service of the railroad company, to deceive his patient to her prejudice by giving utterance even to an opinion concerning the time of her probable recovery which he did not honestly entertain. In his situation, he was bound to act toward the complainant with the utmost good faith, and being at the time the paid agent of the defendant company, if he did not so act, but held out false hopes of recovery, and thereby deceived her, the company should be held accountable for his wrongful conduct, and the release which was executed in reliance upon his advice, if it was so executed, should be vacated. As above stated, however, the evidence contained in the record does not satisfy me that Dr. Thompson did express the opinion that the complainant would doubtless recover within a year; neither does it convice me that he intended to deceive or to mislead her in any manner, and for this reason I concur in the reversal of the judgment.