### GREAT NORTHERN RY. CO. v. REID.

(Circuit Court of Appeals, Ninth Circuit. August 20, 1917. Rehearing Denied October 8, 1917.)

### No. 2896.

1. RELEASE ⬅️34—SCOPE—CONSTRUCTION.

    A release for personal injuries resulting from an accident will not cover personal injuries not in contemplation of the parties and then unknown to each, despite the greatest generality in language.

2. RELEASE ⬅️57(2)—IMPEACHMENT—EVIDENCE.

    Where claim for personal injuries is released on settlement, the release cannot be impeached or set aside for fraud or mistake, except upon clear and convincing proofs.

3. RELEASE ⬅️57(2)—EVIDENCE—SUFFICIENCY.

    In a suit to set aside a release given for personal injuries, evidence *held* to establish that, while there was no fraud in procuring the release, complainant had incurred injuries which were unknown to either of the parties, when the settlement was made, and hence to that extent to require setting aside of the release.

4. RELEASE ⬅️16—VACATION—PARTIAL IMPEACHMENT.

    A release of personal injuries may be partially impeached, as where the injured party suffered injuries which, at the time the release was executed, were unknown to both.

5. RELEASE ⬅️16—ANNULMENT—GROUNDS.

    Where complainant, who was injured, did not know that he had incurred inguinal hernia, but thought that the only serious injury was to his

⬅️For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

foot, his refusal, when examined by a physician, to remove his coat and exhibit a bruise on his arm and shoulder, does not estop him from impeaching his release on the ground that it did not include a release of claims for the hernia.

Appeal from the District Court of the United States for the Northern Division of the Eastern District of Washington; Frank H. Rudkin, Judge.

Suit by W. H. Reid against the Great Northern Railway Company. From a decree for complainant, defendant appeals. Affirmed.

The appellee herein, who was complainant below, was, on and prior to May 10, 1915, in the employ of the appellant, the Great Northern Railway Company, as a cook on one of its work trains. While the company was moving the car on which appellee was working about the switch, it was derailed, and he was thrown against the sink in the car. The top cover of the stove fell upon his right foot, and, withal, he received certain physical injuries. To recover damages for such injuries as he received, he instituted an action against the company. The company by its answer pleaded a release of liability executed by appellee. The release is in language following:

"Know all men by these presents, that in consideration of the sum of ten and no/100 dollars to me in hand paid by the Great Northern Railway Company, the receipt whereof is hereby acknowledged, have released, acquitted, and discharged, and do by these presents release, acquit, and discharge, said railway company, its successors and assigns, of and from any and all liability, causes of action, costs, charges, claims, or demands, of every name and nature, in any manner arising or growing out of, or to arise or grow out of, personal injuries received by me (W. J. Reid) at or near Geyser, in the state of Montana, on or about the 10th day of May, 1915, while acting as a cook, I met with an accident whereby I sustained personal injuries, or arising. or to arise, out of any and all personal injuries sustained by me at any time or place while in the employ of said railway company prior to the date of these presents. No promise of future employment has been made to me by said railway company as part consideration of this settlement and release, or otherwise."

The back of the release contains an indorsement in appellee's handwriting, namely:

"I have red within Releas before signing and fully understand that the sum of ten dollars is in full settlement of all claim of every kind.

"W. J. Reid."

In addition, appellee signed a voucher which contained substantially this provision:

"For and in consideration of any and all claims, past, present, and prospective, against the Great Northern Railway Company, arising or to grow out of personal injuries received by me at or near Geyser, Montana, on or about May 10, 1915, $10.00."

For the purpose of having the release canceled, this suit was instituted against the company. Among other things, it is alleged, in effect, that appellee suffered the following injuries: A double inguinal hernia, a broken arch of the right foot, a severe wrench of the back, a severe shock to the nervous system, and, as resulting from such injuries, a semi-paralyzed condition of both legs; that on the same day the claim agent of the company took appellee to the office of its physician and surgeon, who, upon a cursory examination of appellee, informed him that his injuries were slight, and amounted to nothing more than a nervous shock and a slightly sprained ankle and instep, that he would be entirely recovered in a day or two; and that the claim agent would give him $10, representing two or three days' work, and would hold open his position for him; that appellee accepted the $10 from the claim agent, for no other purpose than as pay for his time, and signed the papers in question. It is further alleged that, at the time of signing the papers, appellee was not aware that he had broken the arch of his right foot, or had suffered double inguinal hernia, or any other injury which might

cause any disability to his earning power, and that such or any injuries were never taken into consideration by him at the time of signing the documents in question, nor by the claim agent of the company.

The appellee's testimony is quite brief. He says:

"The trucks ran off the rails, and practically mashed the biggest part of the dishes. The top of the stove fell across my foot, and it threw me up bodily against the sink, which was near the side of the car, and it hurt me. I got hurt on my foot, and I was shaken up completely, my nerves, nervous shock, and I have been sick practically ever since. Worked a little off and on. * * * They took me to the doctor's office in an automobile; examined my foot, bound it up, and told me I was badly shaken up, and said, 'You will be all right to work to-morrow, if necessary.' Just examined my foot, that was all. * * * And after the doctor examined me the claim agent took me right up to his office. He asked me to sign some papers. I don't know what they was. I was too confused. I can't remember one thing I signed, or anything. Q. State what he said to you. A. Why, he said it was necessary to send these back to St. Paul. That is what he said to me. Q. Did he offer you any money? A. No; he said, 'You better take $10 for to get some liniment,' and something like that—$10 to get some liniment to rub on my feet. Q. Did he say anything to you about your working or anything? A. Yes; he did; said I could just stay around town two days and go back to work whenever I wanted to. I have stated everything that the doctor told me about my condition then. * * * I believed the statements made to me in regard to my condition by the doctor. * * * Q. When did you first know, Mr. Reid, that you had a double hernia? A. I don't know now. The next day; I' didn't know what it was. I discovered something down there where it hurt. I had a very small rupture before on the right side, about the size of a marble. I had worn an elastic truss. Q. Had you ever been bothered with it? A. Never; part of the time I would leave it in bed—wouldn't use it. When I went from Geyser to Great Falls, my foot was swollen up, so it hurt me, and I cut my shoe right up there. It swelled up a bit; bandaged it up. I went back to work that same day, because the doctor told me there was nothing the matter with me."

As to the writing, he says he just looked it over; that he could not read very well, and just signed it as it was written, and that it was not read to him. On cross-examination, he testified that he had had a hernia on the right side for three years before the accident, and told how he came by it. As to the hernia on the left side, he said it did not bother him much—it was only a small one.

Dr. Downs, who examined appellee on February 26, 1916, states that Reid was suffering from a right and left inguinal hernia; was in a very nervous condition, and very poorly nourished; had a slight swelling in the right foot, which he found to be a flatfoot. The hernia on the right side was the larger one; the one on the left not so large—about the size of a walnut. The arch on his foot was flattened out and broken down. This condition generally prevailed as to his left foot.

Dr. Longeway, the company's physician, testified that he examined appellee on the day of the accident; that appellee told him he had a bruise about the shoulder and arm; that he examined his foot, and found that it was injured and bruised, and the ankle slightly sprained—and continued as follows: "He was walking on it; walked on it to the office. I asked him about his arm, and he said that didn't amount to anything. I asked him to take off his coat, and he said that didn't amount to anything; his injuries were not bad and he wouldn't take off his coat and let me examine it. He said that he would be all right; he was just bruised about the right arm and shoulder. Consequently he didn't take off his coat, and I didn't examine his arm. He said it didn't amount to anything and would be all right. I bandaged his foot and told him to stay around two or three days and let me watch him. 'No,' he said, 'it is all right.' He wanted to get right back to work, and he left my office, and that was the last I ever saw of him. His right foot then was practically the same as it is now, except it was more swollen around the ankle at that time than it is now. He had a pretty flat foot. * * *

He didn't at that time complain to me about any hernia, or any other injury than these that I have testified to. * * * I didn't make any statement to him that he could go right back to work; that his injuries were slight. * * * I believed he would be all right in a few days."

P. B. Foley, the claim agent, testified that, after appellee had been to the doctor's office, Burton brought him into his office, and then as follows: "I asked him, 'Did the doctor look you over?' He said, 'Yes, sir.' I said, 'What did he tell you?' 'He said my ankle was sprained a little; said he thought it would be all right in a little while, and advised me to stay around a few days.' 'Well,' I said, 'I think you better do that.' I said, 'I think you better stay around here a few days and have the doctor attend you.' He says: 'No; I am anxious to get back to the job. I will be all right; it is a little sprain; I will be all right; I want to get back on the job.' I says, 'All right; suit yourself.' Then I said, 'Well, what do you want us to do for you?' He hesitated a little while, and he says: 'I don't know. I will only lose this day.' Then I says, 'Well, I would like to know what you want us to do for you in settlement, that is in the line of settlement.' He says, 'Well, how will $10 do?' 'Well,' I says, 'if that is what you want,' I says, 'it is all right.'" The release and other papers were then made out and signed. Burton corroborates this statement.

Dr. H. P. Marshall, who made a recent examination, found appellee suffering from arteriosclerosis, double inguinal hernia, and double flatfoot.

Charles S. Albert and Thomas Balmer, both of Spokane, Wash., for appellant.

N. E. Nuzum and R. W. Nuzum, both of Spokane, Wash., Harold N. Nuzum, of Los Angeles, Cal., and Arthur H. Steake, of Spokane, Wash., for appellee.

Before GILBERT and HUNT, Circuit Judges, and WOLVERTON, District Judge.

WOLVERTON, District Judge. [1] The question presented for decision is whether the release should be canceled for fraud or mistake. The release itself is as broad as it could be made, acquitting the company of all liability arising on account of the injuries received by appellee, whether then appearing or growing out of the same by development in the future, or arising or to arise out of any and all personal injuries sustained at any time or place while in the employ of the railway company prior to the date of the release. In such a release, however, the general language will be held not to include a particular injury, then unknown to both parties, of a character so serious as clearly to indicate that, if it had been known, the release would not have been signed. This was the conclusion reached in Lumley v. Wabash R. Co. (C. C. A. 6th Circuit) 76 Fed. 66, 22 C. C. A. 60. See, also, Tatman v. Philadelphia, B. & W. R. Co. (Del. Ch.) 85 Atl. 716.

[2, 3] From the testimony, it is perfectly apparent that there was no fraud whatever attending the transaction of giving the release. Considerable concern was manifested by the claim agent that the affair should be speedily closed, but the appellee suffered no disadvantage by reason thereof. The appellee had come to Great Falls, a distance of 40 miles, of his own accord, with a view to getting relief of some sort from the company for his injuries. Having met Burton, he was taken to the office of the company's physician, and, after examination, repaired to the claim agent's office, where the release was

soon signed. That he understood what he was signing, and the nature and purpose thereof, can scarcely be gainsaid. It is evident that he believed he was but slightly hurt, and was seemingly anxious to get back to his work, and, so believing, he was willing to accept $10 and acquit the company of further liability.

Whether he knew and understood the full nature and extent of the real injuries sustained is the vital question for consideration. The proofs fall far short of substantiating the complaint as to the nature and extent of his injuries, and at present, according to the medical experts, his physical afflictions consist of arteriosclerosis, double inguinal hernia, and double flatfoot. It is not at all probable that the first of these conditions was superinduced by the accident. The evidence does not, in any substantial way, indicate that such was the case. The third, namely, double flatfoot, existed prior to the accident, and was not caused thereby, while as to the right foot the condition may have been, and probably was, somewhat aggravated. As to the hernia, he had been so afflicted upon the right side for the space of three years, and thus far the accident has not contributed consequentially to his ailment. The hernia upon his left side had not developed prior to the accident. The first indication that he had of its existence was the next day, when he says he "discovered something down there where it hurt." Later, however, the trouble became well defined, and on February 26, 1916, when he was examined by Dr. Downs, it was about the size of a walnut. It further appears, however, that at the time of the trial appellee's body was poorly nourished, and that his general health and physical condition were far from good. Such was not the case to the same degree at the time of the accident, for he was doing his work, with some inconvenience only in getting about on account of his feet.

The rule unquestionably applies to settlements of the kind here involved that they neither can nor ought to be impeached and set aside for fraud or mistake, except upon clear and convincing proofs. Chicago & N. W. Ry. Co. v. Wilcox, 116 Fed. 913, 54 C. C. A. 147. Has the appellee met the exigency? For upon him was devolved the burden of so impeaching the release.

As we have seen, no conceivable fraud has been established. That appellee did receive a shock from being thrown against the sink, resulting in some distress to himself, can scarcely be questioned. At that time he was not afflicted with an inguinal hernia on his left side. The following day he experienced pain in that region of his person, and later the hernia developed, so that it became well defined. That he was so afflicted on February 26, 1916, is shown by Dr. Downs, who is corroborated in this by Dr. Longeway and Dr. Marshall. So it appears reasonably clear and certain that the development of this particular trouble began at least about the time of the accident, and that he was then afflicted in a way that was not known to him, and which for that reason was not disclosed to the physician, and consequently not taken into consideration when he settled with the claim agent and gave the release. We think that, under the authorities, there is here sufficient to impeach

the settlement in so far as it relates to this phase of the controversy, and to that extent the release should be set aside.

[4] We agree with the court below that it should not be disturbed as it respects the injury to his foot. Lumley v. Wabash R. Co., supra, is authority for the partial impeachment of the release. Upon the general question of annulling such a release, see, further, Great Northern Ry. Co. v. Fowler, 136 Fed. 118, 69 C. C. A. 106, where the authorities are aptly and clearly discussed and distinguished; also Tatman v. Phil., B. & W. R. Co., supra.

[5] Another contention of appellant is that appellee is estopped from urging the annulment of the release on the ground that he refused to remove his clothing, so that the physican might examine his arm and shoulder, which appellee seemed to think were injured somewhat. That particular supposed injury, however, was not taken into account at the time of the settlement, and no question is made of it in this proceeding, and the incident is not of sufficient consequential importance to base an estoppel upon it against inquiry as to the real injuries sustained.

Decree affirmed.